IN RE WELFARE OF M. D. A. v. STATE.
KENNETH F. SCHOEN v. LINDSAY G. ARTHUR.

237 N. W. 2d 827.

December 19, 1975—Nos. 46255, 46270.

*Lane Ayres,* Hennepin County Assistant Public Defender, Juvenile Division, for petitioner-juvenile.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, and *James N. Bradford,* Assistant Attorney General, for petitioner-commissioner of corrections.

PER CURIAM.

Two petitions, considered together, for a writ of prohibition restraining the Hennepin County District Court, Juvenile Division, from the issuance of orders restricting and impairing the exercise of the powers, duties, and discretion of the commissioner of corrections with regard to the disposition of minors adjudicated delinquent and committed to the care and custody of the commissioner. Writ shall issue.

A petition was filed on February 14, 1975, in the Hennepin County District Court, Juvenile Division, alleging that the juvenile, M. D. A., a petitioner in this matter, had committed four acts of burglary and one act of escape from Metropolitan Training Center at Lino Lakes. Juvenile Court File No. 75436. Pursuant to a motion by the Hennepin County Attorney filed February 28, 1975, a reference hearing pursuant to Minn. St. 260.125 was held on April 14, 1975. The motion for referral for prosecution as an adult was denied, and the juvenile was committed to the custody of the commissioner of corrections on April 15, 1975. The commitment order provided:

"10.   At least ten days prior to a proposed release, the Commissioner of Corrections will so notify the County Attorney of Hennepin County.

"11.   If the County Attorney does not concur in the release, he may move the Court for a hearing to determine whether for the public safety the Court should require continued security."

By letter of August 6, 1975, Carl Clay, corrections agent of

the Department of Corrections, notified the court that subject juvenile was a candidate for parole. In response, on August 14, 1975, John Trojohn, Assistant Hennepin County Attorney, notified Mr. Clay that he remained of the opinion that the juvenile was a proper subject for adult referral or that in the alternative, "he should not be free from a secure setting."

The court, on August 15, 1975, ordered that a hearing be conducted on September 9, 1975, for determination of whether subject juvenile was properly considered for parole or whether continued detention should be ordered. Counsel for the juvenile objected to this hearing upon the basis that the considerations were not within the jurisdiction of the court.

Pursuant to the hearing, an order was issued on September 9, 1975, concluding that the hearing was conducted to determine "whether the Respondent had ceased to be dangerous to a degree that he could be permitted into the community." The court found:

"The Court is advised that the child has now been tried in one more program in the Juvenile System, that he has not run away though it would have been possible, and he has earned enough points to justify release according to the usual system of the Commissioner. There is, however, no evidence that the child is any less prone to the commission of felonies than at the time of his commitment."

It was therefore ordered:

"That the Commissioner continue to provide treatment and appropriate security and to notify the County Attorney at least ten days prior to a release, based upon substantial evidence, that the Respondent has been sufficiently rehabilitated as to no longer constitute a present danger to the community."

The commissioner of corrections, Kenneth Schoen, also seeks a writ of prohibition ordering the juvenile court to rescind the orders requiring notice to the county attorney prior to the release of the juvenile and prescribing the conditions of his commitment

to the commissioner, to rescind similar orders in proceedings involving two other juveniles, and to refrain from issuing like orders in the future. In the latter proceedings, In re Welfare of D. M. S. (Juvenile Court File No. 78219) and In re Welfare of E. W. (Juvenile Court File No. 82867), custody was transferred to the commissioner of corrections with provision for a review by the county attorney should their release be recommended. Upon disapproval by the county attorney of the release of the juveniles, a hearing would be conducted before the juvenile court with the state having the burden of proof that security was still necessary.

As evidenced by this state's comprehensive Juvenile Court Act, it was intended that the juvenile courts should employ their full resources to serve the best interests of the child in conjunction with the goal of insuring protection for the public. The act itself then provides for its liberal construction to accomplish this purpose. Minn. St. 260.011, subd. 2.

The transcript of the hearing of September 9, 1975, in regard to M. D. A. evidences continued assertions by the juvenile court that the orders were proper within its broad jurisdictional powers. There is no reliance upon any specific statutory authority to support these assertions.

The juvenile court has the broad and continuing jurisdiction necessary to provide for the achievement of the expressed goals of the Juvenile Court Act. However, the court is limited in its disposition of any proceedings by Minn. St. 260.181 to 260.193 and, with particular regard to a delinquent child, by Minn. St. 260.185.

The section necessarily relied upon by the juvenile court in its disposition of the subject juveniles was Minn. St. 260.185, subd. 1(d), which provides:

"Except for children found to be delinquent as defined in section 260.015, subdivision 5, clauses (c) and (d), unless the child has previously appeared before a juvenile court on the same charge, and in the judgment of the court, community resources

have been exhausted, [the court may] transfer legal custody by commitment to the commissioner of corrections."

The precise issue presented is whether a disposition and transfer of legal custody by commitment to the commissioner of corrections is tantamount to the termination of jurisdiction provided by Minn. St. 260.181, subd. 4, which states:

"The court may dismiss the petition or otherwise terminate its jurisdiction on its own motion or on the motion or petition of any interested party at any time. Unless terminated by the court, the jurisdiction of the court shall continue until the individual becomes 21 years of age if the court determines it is in the best interest of the individual to do so."

Were this court to conclude that the juvenile court was empowered to review release decisions of this nature, the decision would ignore the specific legislative statutory scheme designed for disposition of juveniles adjudicated as delinquents.

Minn. St. c. 242 was created with a goal of the establishment of training and treatment programs aimed at correcting and rehabilitating those juveniles found to be delinquent. Minn. St. 242.10 provides in pertinent part:

"(3) The commissioner of corrections may designate from among the members of his staff, one or more hearing officers and delegate to them the authority *to grant or revoke probation, commit to an institution, grant or revoke parole, or issue final discharge to any person under the control of the commissioner pursuant to a commitment to him by a juvenile court of this state.* Any person aggrieved by an order issued by such officer may appeal to the commissioner or to a *review panel* established by the commissioner within his department pursuant to rules issued by the commissioner." (Italics supplied.)

This statute places the authority over final disposition of juveniles exercised here by the juvenile court in the hands of the commissioner of corrections once the juvenile court has committed

the delinquent child to his custody. Significantly, this provision grants review to "any person aggrieved by an order" before a review panel established by the commissioner, not before the juvenile court.

Further, the commissioner of corrections is empowered to fully study the juvenile's background and provide treatment necessary to satisfy statutory goals. Minn. St. 242.18. In enumerating the powers of the commissioner with regard to disposition of juveniles committed to him, Minn. St. 242.19, subd. 2, states in pertinent part:

"* * * [T]he commissioner may for the purposes of treatment and rehabilitation:

\* \* \* \* \*

"(b)   order his release on parole under such supervisions and conditions as the commissioner believes conducive to law-abiding conduct, treatment and rehabilitation;

\* \* \* \* \*

"(e)   discharge the child from his control when he is satisfied that the child has been rehabilitated and that such discharge is consistent with the protection of the public."

A reading of this statutory provision necessitates the conclusion that the Juvenile Court Act does not confer jurisdiction upon the juvenile court to review a decision of the commissioner of corrections to release a juvenile and that such a decision is properly that of the commissioner acting alone.

Writ shall issue.