In re William Robert LUFSKY, Jr.

No. C6–85–1981.

Court of Appeals of Minnesota.

Jan. 14, 1986.

Joan B. Tietjen, Minneapolis, for appellant William R. Lufsky, Jr.

Robert M.A. Johnson, Anoka Co. Atty., Janice Allen Wheat, Asst. Co. Atty., Anoka, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Lufsky seeks review of an October 8, 1985 order, finding him to be a mentally ill person and committing him to the Minnesota Security Hospital, and from supplemental findings of fact issued on October 14. We affirm.

## FACTS

William Robert Lufsky, Jr. is a 33-year old man with a history of treatment for

mental illness. He was released from the Minnesota Security Hospital in December 1983 and continued treatment on an outpatient basis. Lufsky lived with his parents following his release from the hospital.

On September 18, 1985 Lufsky became angry with his 78-year old father. He tied an electrical cord around his father's neck and dragged him out of the house. When Lufsky's mother intervened, he also tied a noose around her neck. Lufsky threatened his parents, tore the phone from the wall, threw and burned household furnishings, and disabled the family car by removing spark plug wires.

The next morning Lufsky's father walked to a store and called police. Four loaded guns and a machete, which the parents said belonged to Lufsky, were removed from the home. Lufsky was later apprehended and a petition for commitment was filed.

At the commitment hearing on October 8, the court appointed examiner testified that Lufsky is mentally ill, with a diagnosis of manic depression. Examiner James Gilbertson described Lufsky's tendency to paranoid thoughts and to aggressive and explosive behavior. Although medications help to manage Lufsky's anger and aggression, he had stopped taking prescribed medications at the time of the September incident.

Gilbertson recommended that Lufsky's medications be stabilized before his release from the hospital. After stabilization, Gilbertson recommended discharge to a community facility for supervised aftercare. However, if no facility was available, Gilbertson testified hospitalization was the least restrictive alternative. The examiner told the court that he was aware community facilities were reluctant to accept Lufsky until he demonstrated a longer period of stable behavior.

Even when stabilized, Gilbertson warned that Lufsky would always be mentally ill, although not always actively psychotic. Kevin Ferris, Executive Director of the Manic Depressive Society, has known Lufsky for approximately two years, since his re-

lease from the Security Hospital. Ferris found Lufsky reluctant to continue in any structured treatment program and irresponsible about taking medications. Ferris recommended a secure environment where medication compliance can be monitored.

Ferris testified Lufsky has paranoid concerns about hospitalization at Anoka State Hospital. The record indicates that Lufsky was transferred from Anoka to the Security Hospital after threatening Anoka staff. Ferris believed Lufsky could again lash out at Anoka staff. Gilbertson testified Anoka was an acceptable placement, if Lufsky was cooperative with treatment. If not, or if Anoka staff were afraid of Lufsky, Gilbertson felt Anoka would be an inappropriate placement.

Roy Newcombe, an Anoka County social worker assigned to Lufsky, told the court about his efforts to place Lufsky in various community facilities. Lufsky was interviewed at two facilities and Newcombe contacted two other potential community placements. All rejected Lufsky because of the recency of the violent September incident. In Newcombe's opinion, there remained no less restrictive alternative to placement at a state hospital.

The trial court received the pre-petition screening report, without objection from Lufsky's counsel, to avoid the need to call additional witnesses. Lufsky called no witnesses in his own behalf. The trial court found Lufsky was a mentally ill person as defined by statute and no reasonable alternative to commitment existed. Lufsky was committed to Minnesota Security Hospital, which was authorized to administratively transfer him to Anoka State Hospital, if appropriate. Additional findings of fact, addressing Lufsky's behavior, the examiner's testimony, and the lack of alternatives, were issued on October 14.

Appellant argues that the trial court erred in finding he was a mentally ill person and by committing him to the Security Hospital.

## ISSUES

1. Did the trial court err by finding appellant was a mentally ill person as de-

fined by Minn.Stat. § 253B.02, subd. 13 (1984)?

2. Were less restrictive alternatives to Minnesota Security Hospital properly rejected?

## ANALYSIS

### I.

A mentally ill person suffers from a substantial psychiatric disorder which grossly impairs judgment, behavior, recognition of reality, reasoning, or understanding. The disorder must also be "manifested by instances of grossly disturbed behavior or faulty perceptions" and must result in the proposed patient posing "a substantial likelihood of physical harm to himself or others as demonstrated by" a recent attempt or threat of harm or a failure to provide necessities of life. Minn.Stat. § 253B.02, subd. 13 (1984).

■ Lufsky does not dispute the diagnosis of a substantial psychiatric disorder, but argues the evidence was insufficient to find the disorder was manifested by grossly disturbed behavior or faulty perceptions. We will not disturb the trial court's factual findings unless they are clearly erroneous. Minn.R.Civ.P. 52.01. In fact, the record amply supports a finding that Lufsky's illness was manifested by grossly disturbed behavior. He assaulted his parents, destroyed furnishings and disabled the family vehicle.

Lufsky also argues the evidence was insufficient to establish that he, as a result of mental illness, "poses a substantial likelihood of harm to himself or others[.]" Minn.Stat. § 255B.02, subd. 13. The examiner testified that Lufsky is at very high risk of harming himself or others, especially when actively psychotic.

At the time of the commitment hearing, Lufsky's condition had partially stablized. He argues that this renders the likelihood of recurring violence insubstantial. While the likelihood of future violence is a factual determination for the trial court, the statute requires that determination be supported by evidence that the proposed patient has recently attempted or threatened physical harm. *Id.*

It is clear Lufsky attempted to harm his parents only two and one half weeks before the commitment hearing. The record shows Lufsky is resistant to continued treatment, previously stopped taking prescribed medications, and had six to eight violent episodes in the past two years. The court's finding that Lufsky is likely to harm those around him is not clearly erroneous, even though his active psychotic symptoms may have partially subsided during the brief hospitalization prior to the commitment hearing. *See In re Malm*, 375 N.W.2d 888 (Minn.Ct.App.1985).

### II.

■ A mentally ill person may be committed only if the trial court finds there are no suitable alternative dispositions. Minn.Stat. § 253B.09, subd. 1 (1984). The trial court must carefully consider alternatives to involuntary hospitalization. *In re Davis*, 371 N.W.2d 91 (Minn.Ct.App.1985).

The record in this case shows stabilization of Lufsky's behavior through medications was necessary. Ferris testified that Lufsky was resistant to voluntary outpatient treatment, which had already proved unsuccessful. Both Ferris and the court-appointed examiner recommended commitment to a secure facility. In light of the record, the trial court did not err by rejecting alternatives to commitment.

■ A separate area in which the trial court must consider alternatives is placement. The patient must be committed "to the least restrictive treatment facility which can meet the patient's treatments needs[.]" Minn.Stat. § 253.09, subd. 1. Examiner Gilbertson testified that placement in a community facility might be appropriate, but recognized such facilities were reluctant to accept Lufsky until he demonstrated a longer period of stable behavior. Lufsky's social worker told the court there were no appropriate and available community placements. As a result, Gilbertson testified, "we have run out of

options—less restrictive options for Mr. Lufsky at [this] time." Where no community facilities have openings or will accept the patient, the trial court properly rejects them as alternatives. *See In re Knapp,* 351 N.W.2d 391 (Minn.Ct.App.1984).

Gilbertson recommended hospitalization, and believed Anoka State Hospital staff would be unable to effectively treat Lufsky if they are afraid of him. Lufsky's medical records show he was previously transferred to the Security Hospital after threatening Anoka staff. The trial court committed Lufsky to the Security Hospital and noted that he may be transferred to Anoka State Hospital if a secure environment becomes unnecessary. *See* Minn.Stat. § 253B.14 (1984). On the record before us, we conclude that the trial court did not clearly err in rejecting less restrictive alternatives and committing Lufsky to the Minnesota Security Hospital.

## DECISION

The trial court properly found Lufsky was a mentally ill person, as defined by statute, and committed him to the Minnesota Security Hospital.

Affirmed.