In the Matter of Joseph Charles **KING**.

No. C0–91–1032.

Court of Appeals of Minnesota.

Oct. 22, 1991.

Patrick J. Connor, Minneapolis, for appellant King.

Michael O. Freeman, Hennepin County Atty., John R. Owen, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by CRIPPEN, P.J., and DAVIES and THOREEN,* JJ.

## OPINION

CRIPPEN, Judge.

This appeal presents an issue of first impression for Minnesota's appellate courts.[1] Under what circumstances can trial courts involuntarily place a mentally ill patient, not committed as mentally ill and dangerous, at the state security hospital? [2]

---

\* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

1. We find two prior appellate cases involving state security hospital commitments for patients not found to be mentally ill and dangerous. One, decided in an unpublished opinion, involved a challenge to the decision to commit but not the choice of placement. The other reviewed an appellant's plea for care in the community, and it is unclear whether appellant specifically challenged his placement at the security hospital rather than a state regional treatment center. *In re Lufsky*, 379 N.W.2d 255, 258 (Minn.App.1986) (evidence that staff fear of patient at regional treatment center would make them unable to effectively provide treatment).

2. To be committed as "mentally ill and dangerous," where Minnesota's statutes specifically call for placement at the Minnesota Security Hospital, there must be evidence and findings, in addition to those on mental illness, showing that the illness "presents a clear danger to the safety of others as demonstrated by the facts that (i) the person has engaged in an overt acts causing or attempting to cause serious physical harm to another and (ii) there is a substantial likelihood that the person will engage in acts capable of inflicting serious physical harm on

## FACTS

In 1988, appellant was transferred administratively from Anoka–Metro Regional Treatment Center to the Minnesota Security Hospital at St. Peter.[3] The record indicates appellant was previously admitted to the security hospital in 1983, 1985 and 1986. In proceedings not a part of the present record, he was committed to this hospital in 1990.[4] When the term of the 1990 commitment expired, this "recommitment" proceeding was initiated.[5]

Responding to the most recent commitment petition, the trial court ordered hospitalization at the security hospital for a twelve month term, the maximum recommitment term permitted under the statute. Minn.Stat. § 253B.13, subd. 1. The commitment was premised on the risk appellant might harm himself, not others.[6] Appellant asked that his continued commitment be at the Anoka–Metro Regional Treatment Center, one of several state-operated regional hospitals, and he contends the record contains insufficient evidence to permit commitment to the security hospital.

Appellant disputes neither the trial court's finding that he is mentally ill nor

the court's conclusion that he should remain hospitalized. Evidence shows he was chemically dependent and had a schizoaffective disorder. Additional evidence supports the trial court's finding that appellant's condition poses the likelihood of harm to himself. The court relied specifically on evidence that appellant repeatedly pilfered waste caffeinated coffee grounds. The staff viewed this as drug seeking behavior. Dr. Carl Schwartz, the court-appointed examiner, testified that because of appellant's social and chemical dependency problems, he probably lived more comfortably at the security hospital than he could anywhere else. Thus, said Schwartz, recommitment there was in appellant's "best interest."

Prior to March 1990, appellant often assaulted or threatened hospital staff and walked away from hospitalization. Much of this conduct occurred at the Anoka–Metro facility, and Dr. Schwartz predicted the consequences of returning appellant to Anoka:

> I agree with what the people at St. Peter are doing. They're attempting to do a

---

another." Minn.Stat. §§ 253B.02, subd. 17, 253B.18 (1990). The remoteness of dangerous behavior is a consideration that may reduce its significance. See In re Welfare of Hofmaster, 434 N.W.2d 279, 281 (Minn.App.1989) (addressing consideration of event which occurred 11 years prior to present assessment). Less restrictive standards govern the decisions to commit for mental illness and to choose the least restrictive treatment program. Minn.Stat. §§ 253B.02, subd. 13, 253B.09, subd. 1 (1990). On the other hand, the mental illness commitment may be subject to more frequent judicial review. See Minn.Stat. §§ 253B.09, subd. 5 (6 month maximum term for initial mental illness commitment), 253B.13, subd. 1 (12 month maximum term for continued commitment; 12 month maximum term for initial or continued stage of renewed commitment), 253B.18, subds. 3–15, 253B.19 (1990) (commitment as mentally ill and dangerous for indeterminate term, subject to several avenues for review).

3. The record indicates that appellant was placed at Anoka–Metro Regional Treatment Center by commitment. His transfer to the security hospital was evidently pursuant to authority of the Commissioner of Human Services under Minn.Stat. § 253B.14 (1990) (authority to transfer committed patients between state institutions). Both Anoka–Metro and the security hospital are

public institutions administered under the commissioner. Minn.Stat. §§ 253.015, 254.05 (regional centers), 253.20 (1990) (security hospital).

4. Because it is evident the 1990 commitment was for a 12 month term, we can assume that those proceedings also involved findings that appellant was mentally ill, not that he was mentally ill and dangerous. See footnotes 2 and 5.

5. The Minnesota Commitment Act of 1982 substantially increased the occasions for judicial review of involuntary commitments. A key provision of this code limits to 12 months the duration of a mental illness commitment extending a period of involuntary hospitalization. Minn.Stat. § 253B.13, subd. 1. While the 1990 proceedings are not of record, it is evident the commitment was for a one year period.

6. The statutory definition of a mentally ill person includes one with a "substantial psychiatric disorder" which "grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand." Minn.Stat. § 253B.02, subd. 13. The statute requires evidence that the disorder threatens harm, either to the patient or to others. Id. Cf. footnote 2 (definition of person mentally ill and dangerous).

beautiful job on a very difficult case. But the problem that they're faced with is if they transfer him, given any kind of freedom, he's going to steal, he's going to assault, he's going to switch from caffeine to alcohol, marijuana, if he goes to Anoka. He may not escape but go to the edge and buy some alcohol because of the kind of person he is which is well-documented for many years back.

Schwartz observed that appellant's behavior had improved but attributed this to involvement in his present treatment program. He thought it reasonable to expect that appellant could complete his program at St. Peter within the next year.

Appellant asks to be transferred to Anoka so that he can have more family contacts. He explained that he no longer faces the circumstances that lead him to leave Anoka in the past, and he feels is ready for transfer to that center. Appellant testified he had travel outings at St. Peter and did not try to leave on those occasions.

## ISSUE

Was there sufficient evidence to support recommitment of appellant to the state security hospital?

## ANALYSIS

Upon commitment of a mentally ill person, the trial court must place the patient at the "least restrictive treatment program," which is capable of meeting the patient's needs. Minn.Stat. §§ 253B.09, subd. 1, 253B.12, subd. 7 (1990). The court must consider alternative programs as well as the patient's treatment preferences. *Id.*

■ Explaining only that appellant "requires continued hospitalization in a highly structured setting," the trial court found that the security hospital was the least restrictive program available to treat appellant. "Other placements" were considered but rejected. Unless it is clearly erroneous, we must affirm the trial court's finding that there was no suitable less restrictive treatment alternative. Minn.R.Civ.P. 52.01.

■ We have closely scrutinized the record because the legal steps taken here could be employed to shortcut restrictive rules of law legislated for commitment of persons to the security hospital as mentally ill and dangerous. *See* footnote 2. Close scrutiny is also appropriate in light of imprecision in determining whether the security hospital is the least restrictive treatment program for a mentally ill patient. Finally, we treat the topic as a serious judicial concern, knowing there could be a tendency to assume that selection of state programs is normally left to the Commissioner of Human Services during the course of a commitment.[7]

7. The choice to hospitalize a patient at a particular state-operated institution may be a critical part of judicial commitment proceedings and is not a matter always left to the discretion of executive authorities. *Cf. Welfare of M.D.A. v. State*, 306 Minn. 390, 237 N.W.2d 827 (1975) (where court commitment is not to an institution but to the commissioner of corrections, and the commissioner is given statutory authority to control placement and release of committed juveniles, limited only by an express process of review, the commissioner has powers which preclude juvenile court jurisdiction after commitment).

As observed before, the placement choice between state institutions is a prerogative of the commissioner. *See* Minn.Stat. § 253B.14 (1990). We note that this statute speaks of transfers from a "regional center," not specifically from the security hospital, but the record indicates that state officials assume the authority extends to transfers to or from the security hospital, perhaps because it is organized as an entity connected with operation of St. Peter Regional Treatment Center. Minn.Stat. § 253.-20. The commissioner's authority arises immediately upon occurrence of a judicial commitment. This authority is subject to review procedures that occasionally involve the courts. Minn.Stat. §§ 253B.19 (appeal panels on transfer request decisions), 253B.22 (institutional review boards), 253B.17 (1990) (post-commitment court proceedings).

The significance of a committing court's decision placing an individual in a particular facility is not diminished by the Commissioner's ability to transfer a patient within the treatment system. The Minnesota Commitment Act of 1982 demonstrates a legislative determination that patients have the regular benefit of judicial review during the course of involuntary treatment. *See* footnote 2. The courts cannot minimize the choice-of-placement issue by assuming the adequacy of administrative steps at a later

Meaningful review in this case is hampered in part by the scant trial court findings. *See In re Danielson,* 398 N.W.2d 32, 37 (Minn.App.1986) (remand due to insufficient findings). It is troubling that the record includes so little evidence and no findings on the Anoka–Metro program alternatives. Nothing is revealed on the structure available at the center, or the reasons why appellant's improved situation cannot be maintained there. Dr. Schwartz offered only his conclusions about the Anoka–Metro placement alternative. On the other hand, the record barely indicates that appellant's treatment program at St. Peter is restrictive as a matter of fact. Appellant, of course, shares responsibility for the limited record on either program alternative.

■ Notwithstanding our cautious review, we conclude the record is adequate here to support the trial court's findings of fact and conclusions of law. Evidence shows the conclusions of the examiner and other staff, premised on contact with appellant over a period of years, that the regional treatment center is not a suitable alternative placement for appellant before completion of the program at the security hospital. The trial court did not clearly err in acting on these expert opinions. It is sufficiently evident that the court considered the Anoka alternative and appellant's desire for that placement choice.

## DECISION

We find sufficient evidence to sustain the trial court's finding that no less restrictive program was presently suitable for treating appellant's condition.

Affirmed.

date. Thus in recommitment proceedings, questions on the length or need for a commitment cannot predominate over the additional question whether the patient could be transferred to a less restrictive setting. Patients rightfully treasure the opportunity for a judicial proceeding to scrutinize restrictive treatment choices. The recommitment hearing may be the patient's most significant opportunity for judicial review during the commitment.