*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0791**

In the Matter of the
Civil Commitment of:
Michael Alvin Edgar Krengel.

**Filed November 9, 2015
Affirmed
Stoneburner, Judge***

Steele County District Court
File No. 74-PR-15-468

B. Steven Messick, J. Scott Braden, P.A., Faribault, Minnesota (for appellant Krengel)

Daniel A. McIntosh, Steele County Attorney, Sasha J. Zekoff, Assistant County Attorney, Owatonna, Minnesota (for respondent Steele County)

Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and Stoneburner, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STONEBURNER**, Judge

Appellant challenges the district court's order for commitment and treatment with neuroleptic medications, arguing that (1) the district court's finding that he is mentally ill as defined by Minn. Stat. § 253B.02, subd. 13 (2014), is clearly erroneous; (2) the district

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

court clearly erred by finding that there is no reasonable alternative to civil commitment; and (3) the district court's finding that appellant lacks capacity to make decisions regarding administration of neuroleptic medications is clearly erroneous. Because the record supports the district court's findings, we affirm.

## FACTS

Appellant Michael Alvin Edgar Krengel has a history of mental health problems, including a 2013 civil commitment as a mentally ill person in Waseca County and court-ordered administration of neuroleptic medications, which resulted in stabilization and return to the community. In late February 2015, Krengel was placed on an emergency 72-hour hold at the Hennepin County Medical Center (HCMC) after police were called to a homeless shelter where Krengel was exhibiting "very paranoid behavior." Krengel had recently been evicted from a shelter in Mankato for not following rules. HCMC records note "behavior consistent with a probable diagnosis of paranoid schizophrenia," inability to function in the shelter system in freezing winter weather, and "impulse control problems, including behavioral outbursts." Krengel, who denies having a mental illness, refused medications and demonstrated behavior that threatened and intimidated HCMC staff.

Minnesota Prairie County Alliance, the social-services agency for Steele County (Steele County) petitioned the Steele County district court for an order of civil commitment, and Matthew Kesler, a HCMC certified physician's assistant and member of Krengel's HCMC treatment team, filed a request for a hearing to obtain authorization to impose treatment.

2

The district court appointed licensed psychologist Dr. Linda Marshall as the court examiner. Prior to the commitment hearing, Dr. Marshall examined Krengel, reviewed his past medical records, HCMC records, and documents filed in connection with the commitment proceedings, and spoke with HCMC psychiatric nurses who attended Krengel. Dr. Marshall testified that she has diagnosed Krengel with schizophrenia, a condition that is a substantial psychological disorder of thought, mood, perception, orientation or memory that grossly impairs his judgment, behavior, capacity to recognize reality and reason to understand. Dr. Marshall testified that Krengel has failed to provide for his food, clothing, shelter, and medical care, noting that due to his mental illness he has been unable to remain in shelters. Dr. Marshall opined that as a result of his mental illness, Krengel has engaged in intimidating and threatening behavior toward others. Dr. Marshall testified that Krengel poses a likelihood of harm to himself because he is vulnerable if he acts out on some of his paranoid delusional thoughts. Dr. Marshall testified in favor of commitment because that is the only placement that will ensure that Krengel receives appropriate treatment for his mental illness; she noted that treatment with medications in the past has enabled his release from commitment. Dr. Marshall ruled out alternatives to commitment based on Krengel's lack of insight into his mental illness and unwillingness to cooperate with treatment, noting that neuroleptic medications are the treatment of choice for his condition and that those medications have helped him in the past.

Kesler testified that the treatment team has diagnosed Krengel with "some type of thought disorder, psychotic disorder such as schizoaffective disorder or schizophrenia,"

3

noting that the treatment team's lack of knowledge about his past medical history made a precise diagnosis difficult. The treatment plan for Krengel is a trial of an antipsychotic medication to address the psychotic symptoms and help with some of his aggression. Kesler testified that placement in a less restrictive alternative such as a board-lodge facility would be appropriate if Krengel becomes stable enough, noting that the benefit of administration of neuroleptic medications is improvement of the psychotic symptoms "hopefully . . . allowing him to better function in the community." Kesler testified that Krengel does not have a clear understanding of the reasons for hospitalization; the benefits, risks, and alternatives to the proposed medications; or the consequences of not taking the proposed medications.

Krengel testified that he has been diagnosed with "Asperger's" and that people often confuse the symptoms of Asperger's with psychosis. He testified that he does not believe that he has a mental illness and that he is able to take care of himself. He agreed that he was placed in restraints at HCMC because he wanted to "bust somebody in the teeth," but testified that he was just expressing a feeling without intent to act on it. He agreed that he has been "boisterous" at HCMC but contended he has "not been physically aggressive."

In a very succinct order, the district court implicitly credited the testimonies of Dr. Marshall and Kesler and did not credit Krengel's assertion that his symptoms result from Asperger's. The district court found that Krengel is a danger to himself and others, has attempted and threatened physical harm to self or others and has failed to provide himself with shelter and safety. The district court stated that it "has considered alternatives to

4

commitment [and] [t]here is no reasonable and available alternative." The district court found that Krengel is mentally ill as defined by statute and meets the statutory criteria for commitment. The district court also authorized the administration of neuroleptic medications based on its finding that Krengel lacks the capacity to make decisions regarding the administration of such medications. This appeal followed.

## DECISION

On appeal, Krengel first argues that the district court's finding that he meets the statutory definition of mentally ill is clearly erroneous. In reviewing a district court's factual findings for clear error, we examine the record, viewing the evidence in the light most favorable to the ruling, to determine if there is reasonable evidence in the record to support the findings. *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013). "To conclude that findings of fact . . . are clearly erroneous, we must be left with the definite and firm conviction that a mistake has been made." *Id.* (quotations omitted). Although we review the district court's factual findings for clear error, "[w]e review de novo whether there is clear and convincing evidence in the record to support the district court's conclusion that appellant meets the standards for commitment." *In re Thulin*, 660 N.W.2d 140, 144 (Minn. App. 2003).

Minn. Stat. § 253B.02, subd. 13(a) (2014), defines a person who is mentally ill, in relevant part, as

> any person who has . . . a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which is manifested by instances of grossly disturbed behavior or

5

> faulty perceptions and poses a substantial likelihood of physical harm to self or others as demonstrated by:
>
> . . . .
>
> (2) an inability for reasons other than indigence to obtain necessary food, clothing, shelter or medical care as a result of the impairment . . .;
>
> (3) a recent attempt or threat to physically harm self or others . . . .

Krengel's primary argument is that, contrary to the expert opinions offered by Dr. Marshall and Kesler, he does not have a substantial psychiatric disorder. But the district court plainly credited the experts' testimony, which supports the district court's findings. We defer to the district court's credibility findings. *In re Civil Commitment of Janckila*, 657 N.W.2d 899, 904 (Minn. App. 2003).

Krengel asserts that he cannot be found to be mentally ill unless a disorder defined in the statute renders him unable to control his actions, citing *Johnson v. Noot*, 323 N.W.2d 724, 727 (Minn. 1982) (holding that a character disorder, such as antisocial personality, "substantially impairs mental health and therefore constitutes mental illness only when the disorder takes away the person's ability to control his conduct"). But Krengel is not being committed based on a "character disorder," and the definition of mentally ill has changed significantly since *Johnson*. The record fully supports the district court's finding that Krengel is mentally ill as currently defined by Minn. Stat. § 253B.02, subd. 13(a).

Krengel asserts that there is "no reliable evidence that [he] posed a substantial likelihood of physical harm to others." We disagree. The HCMC medical records admitted into evidence document Krengel's assaultive behavior that led to him being

placed in restraints as well as threats and behavior that made HCMC staff fear for their safety. The record also documents Krengel's eviction from two shelters due to his behavior. Additionally, the district court credited Dr. Marshall's testimony that Krengel may be harmed by others responding to his acting out some of his paranoid delusional thought processes that are documented in the HCMC records. She testified that Krengel is easily agitated and engages in intimidating and threatening behaviors with others. The record supports the district court's finding that Krengel poses a substantial likelihood of danger to himself or others.

Krengel challenges the district court's finding that he has failed to provide himself with "shelter and safety." But the record demonstrates that he was placed on hold at HCMC because he was unable to remain in a shelter and was unable to care for himself in freezing weather. The record reflects that Krengel is unable to develop a discharge plan. We conclude that the record supports the district court's finding that Krengel is unable to provide himself with shelter or safety.

Krengel challenges the district court's conclusory finding that there is no reasonable and available alternative to civil commitment as clearly erroneous. We have stated that "[t]he consideration of less restrictive alternatives is a matter of great significance," and that the drafters of the commitment act intended specificity in the findings of each of the statutory requirements "with a clear recitation of the evidence relied upon in reaching the [district] court's conclusions." *Matter of Danielson*, 398 N.W.2d 32, 37 (Minn. App. 1986) (quotation omitted).

The district court briefly discussed alternative placements in oral findings, stating:

> The least restrictive alternative at this point is the involuntary commitment to a community behavioral health hospital. I do believe that with the administration of the neuroleptic medications that that would be a short term hospital stay. I don't take lightly, basically incarcerating someone in a hospital setting. Nor do I take lightly ordering someone to take medication, but on this record it is clear to me that that is the only way that we can advance Mr. Krengel's health and get him out of the hospital setting. If Mr. Krengel had chosen to take the available recommended prescriptions we likely wouldn't be here in this hearing because he would have been discharged from the hospital some weeks ago having him to [sic] improve sufficiently to be able to manage himself in a less restrictive environment.

Despite the district court's failure to enumerate the alternatives considered and rejected, we conclude that the record supports the finding that commitment is the least restrictive alternative: both experts opined that commitment is the least restrictive alternative because it is the only setting that will ensure appropriate treatment necessary to stabilize Krengel so that he can move to a less restrictive environment. *See Matter of King*, 476 N.W.2d 190, 193-94 (Minn. App. 1991) (concluding sufficient evidence supported the district court's "scant" findings on least restrictive treatment where expert opinion supported the district court's findings); *cf.* Minn. R. Civ. P. 52.01 (stating that oral statements recorded in a transcript can constitute findings of fact).

Krengel's challenge to the order for treatment with neuroleptic medications appears to be based exclusively on his challenge to the district court's finding that he is mentally ill. Because we have affirmed that finding, we do not further address this challenge except to note that Dr. Marshall and Kesler each testified that treatment with

8

neuroleptic medications is the most effective treatment for Krengel's illness and that because Krengel fails to recognize that he is mentally ill, he lacks the capacity to make an informed decision regarding treatment with neuroleptic medications. We affirm the district court's authorization for treatment.

**Affirmed.**