*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1428**

In the Matter of the Civil Commitment of: John Albert Wood

**Filed February 16, 2016
Affirmed
Peterson, Judge**

St. Louis County District Court
File No. 69HI-PR-15-7

Todd E. Deal, Deal & Pineo, P.A., Virginia, Minnesota (for appellant)

Mark Rubin, St. Louis County Attorney, Benjamin M. Stromberg, Assistant County Attorney, Duluth, Minnesota (for respondent)

Considered and decided by Cleary, Chief Judge; Peterson, Judge; and Reilly, Judge.

# U N P U B L I S H E D   O P I N I O N

**PETERSON**, Judge

Appellant challenges the district court's judgment committing him as mentally ill and dangerous. We affirm.

## FACTS

In May 2013, Hibbing police officers Sean Fraser and Daniel Mooers approached appellant John Albert Wood when they saw him searching a dumpster. Wood ran away, and the police pursued him. As Fraser grappled with him, Wood pointed a handgun at Fraser's chest. After subduing Wood, the officers searched him and discovered that the handgun was not loaded, but Wood was carrying a second handgun that was loaded. He

was also carrying ammunition for the first handgun. Wood was charged with second-degree assault, obstructing legal process, illegal possession of a handgun, and fleeing a police officer. He underwent a rule 20.01 examination and was determined to be incompetent to stand trial.

Wood was involved in a similar incident in March 2011. Police officers were sent to Wood's apartment to investigate a complaint about damage to property. Wood became angry and uncooperative, and began a physical altercation with the officers. During the altercation, Wood tried to go into his bedroom. When Wood's apartment was searched later, two loaded handguns were discovered in the bedroom. Following a rule 20.01 examination, Wood was determined to be incompetent. Wood was initially committed for 60 days as mentally ill and dangerous (MID), but he was finally committed as mentally ill (MI). He was discharged to the Community Behavioral Health Hospital in Baxter, where he was monitored for medication compliance. The MI commitment was allowed to expire.

As a result of the rule 20.01 examination following the May 2013 incident, Wood was committed to the Minnesota Security Hospital (MSH) as MI in November 2014. In January 2015, the St. Louis County Attorney's Office filed a petition to commit Wood as MID. At the evidentiary hearing on the petition, the district court received evidence from Officer Fraser and Dr. James Gilbertson, a licensed psychologist who was appointed to examine Wood. The district court also reviewed the report of a second appointed examiner, Dr. Paul Reitman, the police reports from the criminal incident, and clinical notes from the Minnesota Department of Human Services (DHS).

The district court filed an order on February 20, 2015, committing Wood as MID for an initial period not to exceed 90 days and concluding that MSH was the least-restrictive treatment program available. At the final hearing in June 2015, the state re-submitted the previous reports and records. The district court also heard testimony from Dr. Adam Milz, a forensic psychologist with DHS. On July 10, 2015, the district court issued a final order committing Wood for an indeterminate period as MID and concluding that "[t]here are no lesser alternatives that are feasible at this time." Wood appeals.

## D E C I S I O N

"If [a] court finds by clear and convincing evidence that [a] proposed patient is a person who is mentally ill and dangerous to the public, it shall commit the person to a secure treatment facility or to a facility willing to accept the patient under commitment." Minn. Stat. § 253B.18, subd. 1(a) (2014). Wood argues that the district court erred by determining that he was MID. A person is mentally ill and dangerous if (1) he is mentally ill within the statutory definition set forth in Minn. Stat. § 253B.02, subd. 13 (2014);[1] and (2) "as a result of that mental illness[, he] presents a clear and present danger to the safety of others." *Id.*, subd. 17 (a) (2014). A person is a clear and present danger to the safety of others if (1) "the person has engaged in an overt act causing or attempting to cause serious

---

[1] "Mental illness" includes "an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation or memory that grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which is manifested by instances of grossly disturbed behavior or faulty perceptions." *Id.* The person must also pose a "substantial likelihood of physical harm to self or others." *Id.*, subd. 3. (2014). Wood does not contest that he is mentally ill.

3

physical harm to another"; and (2) "there is a substantial likelihood that the person will engage in acts capable of inflicting serious physical harm on another." *Id.*

An appellate court "is limited to an examination of the [district] court's compliance with the statute" and must determine whether the commitment is justified by findings based upon evidence at the hearing. *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995). We view the record in the light most favorable to the district court's decision. *Id.* "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witness." *Id.* "The clear and convincing standard of proof is met where the truth of the facts asserted is highly probable." *In re Disciplinary Action Against Dedefo*, 752 N.W.2d 523, 529 (Minn. 2008) (quotation omitted). "We review de novo whether there is clear and convincing evidence in the record to support the district court's conclusion that appellant meets the standards for commitment." *In re Thulin*, 660 N.W.2d 140, 144 (Minn. App. 2003).

Wood does not dispute that he engaged in an "overt act . . . attempting to cause serious physical harm to another." Minn. Stat. § 253B.02, subd. 17(a)(2)(i). He pointed an unloaded handgun at a police officer's chest, and he was carrying a second handgun that was loaded and ammunition for the first handgun. In 2011, police were sent to Wood's residence when B.N. reported that Wood slashed his tires, broke a window at his business, and made death threats; on the same date, B.N. was sitting at home when Wood threw a large rock through his window. When police went to Wood's home, Wood attempted to enter his bedroom; police later recovered two loaded handguns from the bedroom. Even

4

after Wood was committed in 2013 and received medication, psychiatrists Gilbertson, Reitman, and Milz noted delusional behavior and a continuing hostile preoccupation with the Hibbing police.

Wood argues that, although he may have engaged in an overt act at the time of his arrest, he no longer fits the definition of MID, and "there are currently no indications that [he] is a clear danger to the safety of others." Wood contends that when he is on medication and "therapy compliant," he does not present a future likelihood of danger and, therefore, he should be committed as MI, rather than MID. *See Id.*, subd. 17(a)(2)(ii) (setting forth second prong of MID as "there is a substantial likelihood that the person will engage in acts capable of inflicting serious physical harm on another"). But a court may rely on past instances of conduct, even if "active psychotic symptoms may have partially subsided during the brief hospitalization prior to the commitment hearing." *In re Lufsky*, 379 N.W.2d 255, 257 (Minn. App. 1986); *see also In re Malm*, 375 N.W.2d 888, 891 (Minn. App. 1985) (noting that despite absence of symptoms during hospitalization, "past behavior indicates that [the patient] does stop taking his medication and return[s] to using alcohol when free to do so [and] symptoms do recur" and that "it is appropriate to consider precommitment behavior").

In considering whether Wood was substantially likely to engage in dangerous acts in the future, the district court reasoned that

> a simple mental illness commitment is not a workable plan. In the first place, [Wood] has been historically capable of doing well on his medication regime, but then he eventually quits taking his medications and decompensates, leading to further delusional behavior. Secondly, it would appear that during the

5

> previous mental illness commitment, he was perhaps prematurely discharged into the community. Third, within a short time he engaged in extremely dangerous behavior.

Dr. Gilbertson reviewed Wood's records, interviewed him, and administered diagnostic tests that predict future behavior. He concluded that Wood would be substantially likely to engage in dangerous behavior because of paranoia, an "extremely flawed" perception of reality, and "grievance-oriented thinking." Dr. Reitman reviewed records, interviewed Wood, and administered diagnostic tests. Reitman was principally assessing whether Wood was competent to stand trial on the criminal charges, but he also concluded that Wood fit the parameters of an MID diagnosis. Dr. Milz's first report also assessed competency, but Milz noted that Wood, despite compliance with medication, still "endorsed delusional beliefs . . . that were directly related to the current legal matter." In his second report, Milz wrote that Wood "has demonstrated relative psychiatric stability with regard to his mood symptoms during his current hospitalization (i.e., a lack of significant depressive and manic symptomology that qualify for a mood disorder diagnosis), [but] he has continued to demonstrate significant symptoms of psychosis." Milz also reported that, despite Wood's treatment compliance, there is a "poor" prognosis for his psychotic disease and Wood's other diagnosis, "neurocognitive disorder"[2] has "an expected course of continual decline." Milz concluded that Wood "is at an increased baseline risk of engaging in future violent acts due to the presence of [historical and dynamic risk factors]." Milz was uncertain whether there was a "substantial likelihood" of

---

[2] Milz stated in his report that "neurocognitive disorder" was formerly called "dementia."

6

future violence but he was concerned because of Wood's "continued beliefs of persecution by the Hibbing Police Department, the anger and agitation that accompanies those beliefs, and his ability to procure firearms when in the community."

Clear and convincing evidence supports the district court's findings that (1) the 2011 and 2013 incidents involved conflict with police officers while Wood possessed handguns; (2) Wood eventually quits taking his medications and decompensates, which leads to further delusional behavior; and (3) Wood has a consistent delusional viewpoint and paranoia relative to law enforcement and a fixation on guns. These findings clearly and convincingly support the district court's conclusion that Wood is dangerous to the public.

We note that Wood is contesting his commitment as MID because this diagnosis largely determines where he can be placed. Milz noted that the MSH is "the only secure . . . DHS facility that accepts individuals committed as MID." Milz opined that Wood's "treatment needs could be met at a less restrictive inpatient facility." But meeting Wood's treatment needs is not the only factor that the district court must consider when selecting a treatment program. The commitment statute provides that, upon finding that a proposed patient is MID, "[t]he court shall commit the patient to a secure treatment facility unless the patient establishes by clear and convincing evidence that a less restrictive treatment program is available that is consistent with the patient's treatment needs and the requirements of public safety." Minn. Stat. §253B.18, subd. 1(a). The patient has the burden of showing that there is a less-restrictive option. *Id.*

The only evidence offered about a less-restrictive program was Milz's opinion that, although he thought Wood could receive appropriate care and monitoring in a less-restrictive setting, the only secure treatment facility that would accept a patient committed as MID is the MSH. Wood has not established by clear and convincing evidence that a less-restrictive treatment program is available.

**Affirmed.**